UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALICE NANCE, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ]   2:07-CV-0545-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Alice J. Nance ("Plaintiff") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB").  Ms. Nance timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Nance was fifty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education.  (Tr. at 312.) Her past work experience includes data entry clerk, coding/file clerk, and mail

sorter. *Id*. at 341. Ms. Nance claims that she became disabled on July 15, 2004, due to mental depression, anxiety, degenerative arthritis, cervical spine degeneration, temporomandibular joint pain ("TMJ"), ulcerative proctitis, and hearing problems, including Meniere's Disease, which led to vertigo. *Id*. at 335-39.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of

whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Nance met the insured status requirements of the Social Security Act through the date of her decision.  (Tr. at 19.)  She further determined that Ms. Nance has not

engaged in substantial gainful activity since the alleged onset of her disability. *Id*. According to the ALJ, Plaintiff has the following "'severe' impairments: bilateral sensorineural hearing loss; Meniere's disease; cervical disc disease; anxiety disorder, (not otherwise specified) NOS; and depressive disorder, NOS." *Id*. However, she found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id*. at 20. The ALJ determined that Plaintiff has the following residual functional capacity:

> to sit, stand, and/or walk, for up to six hours each in an eight-hour workday with regular breaks; to lift and carry up to 20 pounds occasionally and ten pounds frequently; to push/pull with the upper and lower extremities; and to otherwise perform light work, within the regulatory definition, that does not involve any balancing or climbing of ladders, ropes, or scaffolds and does not require work at heights; concentrated exposure to noise or temperature extremes; or very sensitive, acute hearing. . . . mild but no more than moderate limitations in her ability to understand, remember, and carry out instructions; to use judgment in making work-related decisions; to respond appropriately to supervision, coworkers, and pressures in a routine work setting; and to deal with changes in a routine work setting."

*Id*. at 21.

The ALJ concluded that Ms. Nance was capable of performing past relevant work, both as a municipal data entry clerk and a USPS data entry/coding clerk,

and that Plaintiff's residual functional capacity would not preclude her from the performance of work-related activities. *Id.* at 24. Accordingly, the ALJ entered a finding that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time from July 15, 2004, through the date of this decision." *Id*. at 25.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Nance alleges that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded. (Doc. 6 at 8-11.) Specifically, Plaintiff believes the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit in that Plaintiff's complaints of pain were not taken into consideration. *Id.* at 8.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require

explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Ms. Nance met the first prong of the Eleventh Circuit's pain standard, but she did not believe that the evidence confirmed the severity of the alleged pain arising from those conditions or that the underlying medical condition could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. 21-22.)

Of particular importance to the ALJ's decision was the opinion of Dr. Roderick Huff. Plaintiff was examined by Dr. Huff for a consultative evaluation on December 4, 2004. *Id.* at 22. Plaintiff indicated to Dr. Huff that, on most days, she lies in bed and watches television, does some "light cleaning" around the house, and she sometimes grocery shops, although back and arm pain limit the amount of items she is able to lift. *Id.* at 177. Dr. Huff found that Plaintiff "demonstrated normal gait and station and full lumbar and cervical range of

motion," and that Plaintiff "demonstrated 5/5 muscle strength in the upper and lower extremities with no signs of muscle atrophy. Sensation and reflexes were also intact." *Id.* at 22. During motor strength testing and straight leg-raising, Plaintiff had no complaints of pain, and he saw no restrictions on Plaintiff's "ability to stand, walk, sit, bend, stoop, crouch, perform fine or gross manipulation, handle, reach, finger, feel, or grasp." *Id.*

Dr. Huff also evaluated Plaintiff's complaints of hearing loss and cataracts. While Plaintiff told Dr. Huff she owned a hearing aide and that it improved her hearing, she did not have it with her at the examination. In spite of Plaintiff not having her hearing aide, Dr. Huff found her to have no difficulty hearing or comprehending what he said, even when he was speaking in a soft voice or from different directions in the room.[1] *Id.* at 23. Further, when Dr. Huff examined Plaintiff's eyes, he found "no clouding of the sclerae or lens and no evidence of

---

[1]While Plaintiff points out that she was seen by Dr. Grayson Rodgers in January 2005, complaining of severe hearing loss and that hearing aids were not effective, this was only one month after Dr. Huff's examination. (Doc. 6 at 7 and *Id.*) Further, as noted by the ALJ, Dr. Rogers found Plaintiff's "ability to communicate to be normal, noting that she rarely or never misunderstood words during conversational speech." Additionally, Plaintiff testified at the time of the hearing that she was not wearing hearing aids, and she did not appear to have any difficulty hearing. As for Meniere's disease, Plaintiff's records only reflect her allegations of the disease, not an actual diagnosis by a physician. *Id.* at 20, 23.

cataracts in either eye." *Id*. at 24.  Ultimately, Dr. Huff concluded "nothing in the physical examination seemed to indicate any sort of impairment that would preclude her from seeking gainful employment." *Id*. at 180.

In addition to Dr. Huff's consultative evaluation, Plaintiff was seen for another consultative evaluation on December 7, 2004, by Dr. Linda M. Little, a clinical psychologist.  (Doc. 6 at 6.)  While Dr. Little did diagnose Plaintiff with anxiety disorder, NOS, "Minere's Disease by patient report," a Global Assessment of Functioning Rating ("GAF") of 55, and falling within the average to low average range of intelligence, Dr. Little's end conclusion was that Plaintiff's speech, language, and thought processes, were all within normal limits.  (Tr. at 182-184.)

Additionally, the ALJ noted Plaintiff's complaints of arthritis, neck, upper back, lower back, and/or shoulder pain, however, she found no evidence of the severe pain and symptoms alleged by Plaintiff, nor were there objective tests or physician's findings to support Plaintiff's claims.  *Id*. at 22.  Plaintiff underwent an MRI of the cervical spine in August 2002, which revealed diffuse disc bulging in several areas, but did not indicate herniations, significant central canal narrowing, or spinal cord abnormalities.  *Id*. at 22, 218.  Plaintiff was also

examined several times between May 11, 2004, and September 2, 2004, by her personal physician, Dr. Terry Schultz, for complaints of back and neck pain, in addition to anxiety and sleepiness.  *Id*. at 22, 156-66.  X-rays of the lumbosacral spine were within normal limits and those of the cervical spine showed only degenerative changes.  *Id*. at 22.  At worst, Dr. Schultz found probable cervical and lumbar strain.  *Id*.  He prescribed medication to Plaintiff, including muscle relaxants, which had at least some success.  *Id*.

The ALJ also considered the opinions of physicians who examined Plaintiff for her complaints of depression, anxiety, TMJ, and ulcerative proctitis.  In 2005 and 2006, Plaintiff was referred to Dr. Elena Herndon, a psychiatrist, for a psychiatric evaluation.  (Tr. at 20.)  Although Dr. Herndon noted Plaintiff's complaints of upper back pain and Meniere's disease, Plaintiff was referred to Dr. Herndon strictly for a psychiatric evaluation due to her depression and anxiety.[2]  (Doc. 6 at 7 and *Id*.)  Dr. Herndon assigned Plaintiff a GAF of 65 and found Plaintiff to have only mild symptoms of depression.  (Tr. at 20.)  Plaintiff was told by Dr. Herndon to stop drinking alcohol and reduce the amount of

---

[2]Plaintiff also points to her treatment in June 2002 by Dr. Tammy Leong for depression and anxiety.  (Doc. 6 at 5.)  However, Plaintiff stated to Dr. Leong that she felt the cause of her depression was the onset of menopause.  (Tr. at 128.)

Klonopin and Lortab she was taking, however, when Plaintiff returned to see Dr. Herndon, she had not done so.[3]  *Id.*

Plaintiff also failed to follow her doctor's instructions when she was diagnosed with TMJ by Dr. Patrick J. Louis in June 2003.  *Id.* at 23, 142-48.  Dr. Louis fitted Plaintiff with a mouth splint and recommended right TMJ arthroscopy, though there is no indication that Plaintiff had this procedure done.  Plaintiff informed Dr. Louis in March 2004 that she had not suffered from any TMJ pain since he fitted her with the splint.  *Id.*  While Plaintiff has complained of difficulty chewing and severe jaw pain since that time to other physicians, evidence indicates she has not used the splint since December 2004 and she has not returned to Dr. Louis.  *Id.* at 21, 24.

As to Plaintiff's complaints of ulcerative proctitis, which Plaintiff claims results in excessive bathroom use and body odor, the ALJ found that there was no medical evidence which "definitively establishes that diagnosis."  *Id.* at 22.  There is record of a complaint made by Plaintiff of "abdominal cramping related

---

[3]The ALJ found that Plaintiff, on several occasions, ignored or failed to follow physician's recommendations, supporting the ALJ's conclusion that Plaintiff's pain was not as severe as she claimed.  At times, she did not take prescribed medication, prematurely stopped taking some, and continued using some medications despite advice to the contrary.

to uterine fibroids" prior to a hysterectomy Plaintiff underwent in October 2003, however, Plaintiff expressly denied experiencing symptoms related to ulcerative proctitis during the preoperative examination for the hysterectomy.  *Id*. at 23.  The only other related complaint was to Dr. Schultz, Plaintiff's personal physician, who treated Plaintiff for several months during 2004.  In an October 2004 visit to Dr. Schultz, Plaintiff complained of rectal pain, but denied having any rectal bleeding or diarrhea.  Plaintiff was prescribed Levsin and, at her follow-up visit in November, she reported improvement.  There is no other evidence of Plaintiff suffering from ulcerative proctitis.  *Id*.

It appears to the Court that the ALJ specifically addressed Plaintiff's allegations of pain in her opinion, and she provided explicit and reasonable reasons for rejecting her testimony.  The objective medical evidence and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that she could perform past relevant work.

IV.     Conclusion.

Upon review of the administrative record, and considering all of Ms. Nance's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 20th day of March 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671